In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Title, Wherever the Same Has Not Been Heretofore Acquired for the Same Purpose in Fee to the Real Property Required in Connection with the Elimination of Grade Crossings on the Long Island Railroad through Jamaica, Borough of Queens, City of New York, Said Property Being Designated as Parcels " A," " B," " C," " D," " E " and " F " on a Map Entitled " State of New York Transit Commission, Map showing property to be acquired in connection with the elimination of grade crossings on the Long Island Railroad through Jamaica, Case No. 2652, Wm. C. Lancaster, Chief Engineer, dated September 7, 1926." CITY OF NEW YORK and LONG ISLAND RAILROAD COMPANY, Appellants; JOHN R. CARPENTER COMPANY, Respondent.— Final decree reversed on the law and a new trial granted, costs to appellants to abide the event. This proceeding was instituted under section 92 of the Railroad Law and certain provisions of the charter of the city of New York for the acquisition of title to property. Respondent was the owner of a plot of ground situated in Jamaica on the line of the Long Island railroad and at a level with it and with a railroad siding running into it. The property, upon which respondent conducted a wholesale and retail lumber business, had a frontage of about 637 feet along the line of the railroad and a depth of about 575 feet. A triangular piece adjacent to the railroad right-of-way and having a frontage of fifteen feet on New York avenue and running thence in an easterly direction about 207 feet, was taken. The property taken was filled in, a retaining wall erected and additional tracks built on the new roadbed, one of which was located on the triangular strip taken. The new roadbed was elevated about twenty-five feet above grade. The elevation of all the tracks to the new grade caused the siding to be discontinued. The siding was not on the property acquired and was

over 400 feet easterly from its easternmost point. The court awarded respondent $250,000 for the land and $10,000 for the improvements on the theory that the loss of the siding resulted in substantial damage to respondent because the remaining property without the siding was no longer useful for respondent's business. Of this damage, as was stated by the court, the "largest measure" appeared to have been the consequential damages arising through the loss of the siding. The assessment of damages on this basis was erroneous. (*Van Aken* v. *State of New York*, 261 N. Y. 360; *South Buffalo R. Co.* v. *Kirkover*, 176 id. 301; *Adamo* v. *State of New York*, 235 App. Div. 12.) Neither the change in the roadbed nor the withdrawal of the railroad shipping facilities followed as a consequence of the use of the property taken. They were the result of the change of grade not made by the railroad for its benefit but pursuant to a statute and for the benefit and safety of the public. Consequential damages may be allowed by reason of the taking and use of the triangular strip; but not on the basis adopted at the trial. Lazansky, P. J., Davis and Johnston, JJ., concur; Carswell, J., concurs for reversal and for a new trial. The substantial damages suffered by the respondent and which have been included in an allowance of consequential damages arose not from the taking of the small strip of land but because of the elevation of the right-of-way. Such damage is *damnum absque injuria*. Respondent is only entitled to consequential damages to the rest of the parcel arising by reason of the taking of the small strip of land, which consequential damages may well be merely nominal in amount; Young, J., dissents and votes to affirm the final decree, being of the opinion that the use of the property actually taken, according to the plans filed, made it absolutely necessary to raise the grade at the point where the siding entered the respondent's property, and to cut off the siding at that point. The purpose of obtaining this property from the respondent was to bring about the improvement, which resulted in cutting off the siding. It was all one enterprise. Without the acquisition of respondent's property the improvement contemplated could not have been made, and in the making of that improvement the use of respondent's property actually taken necessarily resulted in cutting off the siding.